******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JPMORGAN CHASE BANK, N.A. *v.* EUGENE A.
CAM ET AL.
(AC 38622)

Lavine, Alvord and Beach, Js.

*Argued January 18—officially released May 2, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Povodator, J.)

*Denise A. Krall*, with whom, on the brief, was *Joseph
J. Cessario*, for the appellant (named defendant).

*Peter R. Meggers*, with whom, on the brief, was *Brian
D. Rich*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendant Eugene A. Cam[1] appeals from the judgment of strict foreclosure claiming that the trial court erred when it concluded that a settlement agreement he had entered into with the plaintiff, JPMorgan Chase Bank, N.A., permitted the plaintiff to pay the defendant a certain sum of money within a "reasonable time" of the payment deadline provided in the agreement.[2] We affirm the judgment of the court.

The following facts and procedural history are relevant to our resolution of the defendant's claim. On February 11, 2004, the defendant executed and delivered a note in the amount of $900,000 to Washington Mutual Bank, FA, the plaintiff's predecessor in interest, plus a mortgage deed securing property located at 99 Porchuck Road in Greenwich. On March 9, 2009, the plaintiff commenced a foreclosure action against the defendant, alleging that the defendant had defaulted on his payment obligations. The defendant asserted four counterclaims, including a claim that he had been "damaged" when the plaintiff "unlawfully removed or damaged" his personal effects, and, as a result, wrongfully "deprived [the defendant] of his property" and "left [his residence] in an uninhabitable state."

Prior to trial, the parties reached a settlement agreement to resolve their respective claims. On September 17, 2014, the defendant executed the agreement, which had been reduced to writing (agreement). The agreement provided that the plaintiff was to pay the defendant a certain sum of money, paying one half of the sum "within [thirty] days of execution of this Agreement" and the other half "within ten days of title vesting to [the plaintiff]." In exchange, the defendant agreed to stipulate to a judgment of strict foreclosure, which provided that the defendant would vacate the property on or before October 28, 2014. The agreement did not contain a "time is of the essence" clause or any equivalent language that suggested that payment by the plaintiff to the defendant was time critical or that time was material to the agreement.

On October 1, 2014, the plaintiff filed a motion for judgment of strict foreclosure. On October 7, 2014, the parties appeared before the court to enter the stipulated judgment, but the court, sua sponte, declined to accept the stipulated judgment because it was concerned that Narragansett had not been properly served. See footnote 1 of this opinion. The plaintiff served Narragansett and filed a motion for default for failure to appear against Narragansett in January, 2015, and the motion was granted on February 6, 2015.

In February, 2015, the parties engaged in e-mail correspondence regarding the performance dates provided for in the agreement in light of the fact that the court had declined to enter judgment on the motion for judg-

ment of strict foreclosure. The defendant did not demand that the plaintiff make payment, state how he would be negatively affected by a late payment, or assert that the plaintiff had breached the agreement because it did not pay him by the established October 17, 2014 deadline. In March, 2015, however, the defendant informed the plaintiff that he would not move forward with the agreement.

On May 7, 2015, the plaintiff filed a motion to enforce the agreement. In the motion, the plaintiff argued that the agreement was clear and unambiguous, but because the entry of the stipulated judgment had been delayed by the court when it continued the matter on October 7, 2014, the performance dates in the agreement were no longer applicable. It contended that the performance dates should be modified to reflect the current circumstances, and the court should enforce the agreement with the amended dates. The defendant filed an objection, arguing, among other things, that the plaintiff had breached a material provision of the agreement when it did not pay him 50 percent of the settlement within thirty days after he executed the agreement, i.e., October 17, 2014. The court denied the motion without prejudice,[3] and the plaintiff filed a renewed motion to enforce the agreement, to which the defendant objected.

On September 29, 2015, the court granted the plaintiff's renewed motion to enforce. The court found that the parties had entered into an enforceable agreement. It also found that "there [did] not appear to be any provision in the agreement that made enforcement or execution of its terms time-critical, in a time is of the essence or equivalent sense" and noted that "in the absence of an indication that timing is critical, reasonableness as to timing is to be presumed."[4] It found that although the agreement required the parties to take sequential steps, "there is nothing in the agreement that makes performance in 2015 any less effective at meeting the expectations of the parties . . . ." The court also noted that on January 13, 2015, months after the first payment was due, the defendant requested a continuance for a scheduled status conference, indicating to the court that the defendant acknowledged that the agreed upon dates needed to be adjusted and that he intended to consummate the agreement. This appeal followed.

On appeal, the defendant asserts that the court erred in finding that the agreement was enforceable. Specifically, he claims that the court erred in finding that the plaintiff was required to make payment to the defendant within a "reasonable time" following the execution of the agreement rather than strictly within the thirty day deadline. He argues that because the agreement clearly and unambiguously provided that the plaintiff must make payment within thirty days of its execution, which the plaintiff failed to do, the court "erroneously inter-

preted the . . . agreement as lacking any timing provisions relevant to the expectations of the parties." He contends that even though there was no "time is of the essence" clause in the agreement, the deadline was a material term, and, thus, the plaintiff was obligated to pay him 50 percent of the settlement thirty days after the agreement was executed or the agreement would be nullified. We disagree.[5]

We first set forth our standard of review. The defendant argues that the standard of review is plenary because the judgment "being appealed consists of the court's construction of an unambiguous contract." The plaintiff argues that the standard is clearly erroneous. We agree with the defendant.

"A settlement agreement is a contract among the parties. . . . It is well settled that [w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is [plenary]." (Internal quotation marks omitted.) *McCook* v. *Whitebirch Construction, LLC*, 117 Conn. App. 320, 328–29, 978 A.2d 1150 (2009), cert. denied, 294 Conn. 932, 987 A.2d 1029 (2010).

Accordingly, we will determine whether the language in the agreement is clear and unambiguous in order to determine our standard of review of the defendant's claim. "In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Citation omitted; internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 102–103, 84 A.3d 828 (2014).

After reviewing the entire agreement, we conclude that the language of the agreement is clear and unambiguous as a matter of law. There is no provision within the agreement that is susceptible to more than one reasonable interpretation. Thus, our review of the defendant's claim is plenary, and in determining the intent of the parties, "we are limited to the express contractual language and the parties' intent as they

expressed it in the agreements." *Allstate Life Ins. Co. v. BFA Ltd. Partnership*, 287 Conn. 307, 314, 948 A.2d 318 (2008).

"Where a time for performance is stated in an agreement, a party's tender of performance within a reasonable time thereafter will be considered substantial performance unless the parties intended that time for performance be of the essence. See J. Calamari & J. Perillo, Contracts (2d Ed.) § 11-22, pp. 409–10. *Where the agreement does not specifically state that time is of the essence, it is presumed not to be unless the parties have expressed a contrary intent.*" (Emphasis added.) *Mihalyak* v. *Mihalyak*, 11 Conn. App. 610, 616, 529 A.2d 213 (1987). "The fact that a contract states a date for performance does not necessarily make time of the essence." *Grenier* v. *Compratt Construction Co.*, 189 Conn. 144, 151, 454 A.2d 1289 (1983).

The contract in the present case provides a time of performance as to when the plaintiff was to pay the defendant 50 percent of the settlement but is silent as to whether time was of the essence with regard to compliance with the payment schedule. Looking exclusively at the language, and absence of language, in the entire agreement, we conclude that the court properly found that the agreement clearly and unambiguously indicates that the parties did not intend for the plaintiff's payment to the defendant to be time critical, but, instead, intended for performance to be consummated within a "reasonable time" of the thirty day deadline. The agreement contains no "time is of the essence" provision or any language that implicitly indicates that performance was time critical.[6] See *Pack 2000, Inc.* v. *Cushman*, 311 Conn. 662, 688, 89 A.3d 869 (2014) (no time is of essence provision).

The defendant also failed to show that the time of performance on behalf of the plaintiff is a material provision to the agreement. We agree with the trial court that "there is nothing in the agreement that makes performance in 2015 any less effective at meeting the expectations of the parties as expressed in [the] agreement." See id., 675 ("a technical breach of the terms of a contract is excused, not because compliance with the terms is objectively impossible, but because actual performance is so similar to the required performance that any breach that may have been committed is immaterial" [internal quotation marks omitted]). In addition, there is no indication in the agreement that either party would have been harmed if payment were not made by the thirty day deadline. See *Grenier* v. *Compratt Construction Co.*, supra, 189 Conn. 151 (defendant did not show how it was injured by ten day delay). If the parties believed that they would have been harmed if the plaintiff did not pay the defendant within thirty days, they could have incorporated a "time is of the essence" provision into the agreement, but

they did not. See *O'Connor* v. *Waterbury*, 286 Conn. 732, 746, 945 A.2d 936 (2008) ("[w]e are prohibited from implying the existence of a term that is not expressly written in the agreement, because that would require us to rewrite the agreement for the parties").

We, therefore, conclude that the court properly found that the agreement was enforceable and that reasonableness as to time of performance by the plaintiff was to be presumed.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Also named as defendants in the foreclosure action were Wachovia Bank, Narragansett Indian Tribal Historical Preservation Office (Narragansett), Jill Cam individually, and Jill Cam as the parent and guardian of Jason Christopher Cam and Jennica Christina Cam. Only Eugene Cam is involved in this appeal. We, therefore, refer to Eugene Cam as the defendant.

[2] The defendant also claims that because the timing of performance was a material provision of the settlement agreement, the plaintiff's failure to pay by the date specified in the agreement rendered the agreement void and unenforceable. This claim presumes that the time frame for payment stated in the agreement is to be strictly construed. Because we conclude that the agreement required performance only within a reasonable time, we need not reach this claim.

[3] The court denied the motion because the plaintiff did not attach a copy of a nonredacted version of the agreement to the motion.

[4] On November 9, 2015, the court rendered a judgment of strict foreclosure.

[5] The plaintiff argues that the agreement required it to make payment within a reasonable time of the execution of the agreement because the agreement is akin to a real estate contract. We reject the plaintiff's argument that the agreement should be treated as if it were a real estate contract. See *Lind-Larsen* v. *Fleet National Bank of Connecticut*, 84 Conn. App. 1, 19, 852 A.2d 799 (stipulated judgment not real estate contract), cert. denied, 271 Conn. 940, 861 A.2d 514 (2004).

[6] The trial court in *Raymond Marketing Corp.* v. *Cary*, Superior Court, judicial district of Fairfield, Docket No. CV-95-0322740 (December 17, 1996) (18 Conn. L. Rptr. 480), found that even though there was no "time is of the essence" clause, the language in the stipulated judgment—such as failure to make payment would render the agreement "null and void" and "[t]he defendant shall bear the sole responsibility for making sure that the plaintiff's counsel receives each payment before these default deadlines"—implicitly supported the proposition that payment by the defendant to the plaintiff was time critical. Although we note that this case is not binding precedent, we find the difference in settlement language instructive.